**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chelsea Renay Bonham,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-23-00103-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 11), the Commissioner's answering brief (Doc. 13), and Plaintiff's reply (Doc. 16), as well as the Administrative Record (Doc. 8, "AR"), and now reverses the decision of the Administrative Law Judge ("ALJ") and remands for further proceedings.

I.      Procedural History

In July 2020, Plaintiff filed applications for disability and disability insurance benefits and for supplemental security income, eventually alleging a disability onset date of May 1, 2020. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On March 1, 2022, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-29.) The Appeals Council later denied review. (*Id.* at 1-5.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.     The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the amended alleged onset date of May 1, 2020 and that Plaintiff had the following severe impairments: "bipolar disorder, depression, anxiety, diabetes, colitis, status-post cholecystectomy, visual impairment, obesity, lumbar degenerative disc disease, and thoracic spine idiopathic skeletal hyperostosis." (AR at 18.) Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 18-22.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; the avoidance of unprotected heights, workplace hazards, and moving machinery; occasional pushing and pulling a maximum of 10 pounds with the upper and lower extremities; the claimant must alternate sitting and standing by sitting for 15 minutes after every 45 minutes of standing remaining on task; no work with vibrations; the avoidance of no more than moderate exposure to cold temperatures; simple, routine tasks not at a production pace; occasional interactions with supervisors and co-workers; no interactions with the general public; occasional changes to a routine work setting; no work requiring near or far acuity, depth perception, or peripheral vision or field of vision with right eye; and no reading very fine print.

(*Id.* at 22.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that "[a]fter review of the record, the undersigned determined that it does not support the claimant's allegations of disabling symptoms." (*Id.* at 23.) Elsewhere, the ALJ elaborated: "[T]he claimant's allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (*Id.* at 26.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) various state agency medical consultants ("not . . . persuasive"); (2) Matthew Doust, M.D. ("not . . . persuasive"); and (3) various state agency psychological consultants ("not . . . persuasive"). (*Id.* at 24-25.)

Based on the testimony of a vocational expert, the ALJ concluded that although

Plaintiff was incapable of performing her past relevant work as a CNA, she was capable of performing other jobs that exist in significant numbers in the national economy, including door-to-door pamphlet distributor, cafeteria attendant, and cleaner/housekeeper. (*Id.* at 26-28.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 28-29.)

IV. Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ erred in discrediting the opinions of Dr. Doust; and (2) whether the ALJ erred in discrediting her symptom testimony. (Doc. 11 at 1.) Plaintiff further argues that "[r]emand for calculation of benefits would be an appropriate remedy in this case. Only in the alternative should this Court remand for further administrative proceedings." (*Id.* at 22.)

    A.    **Dr. Doust**

        1.    Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[1] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

- 4 -

persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

2. Dr. Doust's Opinions

On February 8, 2022, Dr. Doust filled out a form entitled "Pain Functional Capacity (RFC) Questionnaire." (AR at 1352-53.) In response to the first question, Dr. Doust checked a box indicating that Plaintiff has pain. (*Id.*) In response to the second question, Dr. Doust checked a box indicating that Plaintiff's level of pain severity was "Severe," which was defined in the form as "Extremely impaired due to pain which precludes ability

to function." (*Id.*) In response to the third question, Dr. Doust checked a box indicating that "the above noted degree of pain [can] reasonably be expected to result from objective clinical or diagnostic findings, which have been documented either by you, or elsewhere in the claimant's medical records." (*Id.*) In response to the fourth question, Dr. Doust checked boxes indicating that the following factors precipitated Plaintiff's pain: changing weather, movement/overuse, stress, and static position. (*Id.*) In response to the fifth question, Dr. Doust checked a box indicating that Plaintiff's pain would "constantly" be "sufficiently severe to interfere with attention and concentration." (*Id.*) In response to the sixth question, Dr. Doust checked a box indicating that Plaintiff would "constantly" "experience deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." (*Id.* at 1353.)

3. The ALJ's Evaluation Of Dr. Doust's Opinions

The ALJ found Dr. Doust's opinions "not . . . persuasive." (AR at 25.) The ALJ's full rationale was as follows:

> [T]he undersigned considered the opinion of Matthew Doust, M.D. Dr. Doust opined the claimant has severe pain that constantly interferes with attention and concentration. The undersigned does not find the opinion persuasive. The opinion is not supported by Dr. Doust's physical examination findings. Physical examination reveals a slightly antalgic gait and limited spinal range of motion but is otherwise normal. Likewise, the opinion is not consistent with the degree of abnormality present on imaging. Imaging of the lumbar spine reveals mild to moderate spondylosis and facet arthrosis as well as narrowing of the lateral recesses/neural foramina. There is no evidence of fractures, malalignment, or canal stenosis.

(*Id.*, record citations omitted.)

4. The Parties' Arguments

Plaintiff argues that "[i]n finding Dr. Doust's assessment unpersuasive, the ALJ failed to provide a rational explanation supported by substantial evidence and failed to *articulate* and *explain* the ALJ's rationale to reject the medical opinion by addressing *relevant* objective evidence and explanations that support and/or are consistent with the medical opinion being evaluated." (Doc. 11 at 11.) More specifically, Plaintiff argues that the ALJ's supportability analysis was flawed "because the ALJ only discussed [Plaintiff's]

slightly antalgic gait and limited range of motion and did not explain why other positive findings that supported Dr. [Doust's] assessed limitations were not relied on." (*Id.* at 11-13.) Plaintiff elaborates: "The record shows that at nearly every Pain Center treatment visit except the visits the ALJ cited, Dr. Doust or other providers in Dr. Doust's office observed that [Plaintiff] had tenderness to palpation of bilateral lumbar paraspinous muscles, limited spinal range of motion, and pain with lumbar facet loading maneuvers. Dr. Doust's prescribed course of treatment also supported Dr. Doust's assessed limitations. [Plaintiff] took prescribed opioid pain medications and had multiple invasive pain management procedures like facet injections, nerve blocks, and nerve burning (ablation) in attempts to improve [Plaintiff's] chronic pain." (*Id.* at 13, citations omitted.) Finally, Plaintiff argues that the ALJ's consistency analysis was flawed "because the ALJ again relied on only *portions* of the relevant imaging, ignoring other portions that tended to support and were consistent with Dr. Doust's assessed limitations. For example, . . . [t]he ALJ did not include discussion of the CT scan of [Plaintiff's] thoracic spine, which showed Bonham had diffuse osteoporosis and idiopathic skeletal hyperostosis from T5 through T10. . . . [T]he ALJ did not discuss this imaging or the procedures and failed to explain why these records were left out of the analysis of whether Dr. Doust's assessment was consistent with the medical evidence." (*Id.* at 13-14, citations omitted.) Plaintiff also argues that, if the ALJ had accepted Dr. Doust's opined-to limitations, she would have been found to be disabled. (*Id.* at 14-16.)

In response, the Commissioner defends the sufficiency of the ALJ's analysis. (Doc. 13 at 2-4.) As for the supportability factor, the entirety of the Commissioner's argument (apart from identifying the relevant standards) is as follows: "[T]he ALJ considered that Dr. Doust's examinations revealed only a slightly antalgic gait and some limited spinal range of motion but were otherwise 'normal.' It is also worth noting that the contested opinion is nothing more than a check the box form with no explanation of the opinion for extreme limitations. Under the revised regulations, the supportability factor considers whether the medical sources provide an explanation and objective findings to justify the

degree of assessed limitation. These check box forms do not contain either an explanation or objective findings to support these extreme limitations. Accordingly, these check the box opinions are of little evidentiary value." (*Id.* at 3.) As for the consistency factor, the Commissioner simply repeats the ALJ's analysis without offering any argument as to why it was sufficient: "[T]he ALJ found that Dr. Doust's opinions are inconsistent with the objective imaging which showed only mild to moderate spondylosis and facet arthrosis of the lumbar spine as well as narrowing of the lateral recesses/neural foramina; with no evidence of fractures, malalignment, or canal stenosis." (*Id.* at 3-4.) Nowhere does the Commissioner acknowledge Plaintiff's argument that the ALJ cherry-picked the record or attempt to explain why that argument is incorrect. (*Id.*)

In reply, Plaintiff repeats the arguments from her opening brief and argues that, to the extent "[t]he Commissioner adds impermissible post hoc reasoning, that Dr. Doust's assessment was a 'check the box form,' . . . the ALJ did not rely on this as a reason to reject Dr. Doust's assessment, and an established principle of judicial review is that a reviewing court may not affirm based on facts or rationale upon which the agency did not rely." (Doc. 16 at 3-5.)

          5.      <u>Analysis</u>

The Court agrees with Plaintiff that the ALJ failed to provide legally sufficient reasons for discrediting Dr. Doust's opinions. Although the ALJ considered the supportability and consistency factors, the ALJ's reasoning as to each factor was not supported by substantial evidence.

As for supportability, the ALJ's sole basis for discrediting Dr. Doust's opinions was that "Dr. Doust's physical examination findings . . . reveal[] a slightly antalgic gait and limited spinal range of motion but [are] otherwise normal." (AR at 25.) In support, the ALJ cited three treatment records, "9F/1, 5, 9." (*Id.*) There are two problems with this analysis. First, it is not clear—and, at a minimum, the ALJ did not explain—why largely "normal" physical examination findings would be inconsistent with Dr. Doust's opinions, which were focused on Plaintiff's pain level, not Plaintiff's walking ability or range of

motion. Indeed, in all three of the cited records, Dr. Doust made notations about Plaintiff's pain level that appear to be consistent with the opinions Dr. Doust later offered on that topic. (AR at 728 [noting that Plaintiff's "chief complaint" was pain, that Plaintiff described the pain as "Burning, Sharp, Stabbing," and that Plaintiff described the pain as "Severe"]; *id.* at 732 [same]; *id.* at 736 [same].) Second, although the three records cited by the ALJ contain largely normal physical examination findings, several other records from Dr. Doust (or Dr. Doust's office) contain abnormal findings. (*See, e.g., id.* at 808 ["patient reports tenderness bilateral lumbar paraspinous," "patient reports limited flexion/extension," "patient reports pain with Lumbar Facet Loading Maneuver"]; *id.* at 788 [same]; *id.* at 784 [same].)

In the answering brief, the Commissioner makes no effort to rebut Plaintiff's contention that the ALJ engaged in impermissible cherry-picking by ignoring these treatment records. Instead, the Commissioner's primary argument appears to be that the Court should affirm the ALJ's lack-of-supportability finding on the ground that Dr. Doust's opinions were set forth in an unexplained check-box form. On the one hand, the Court agrees with the Commissioner that this *could* have been a permissible basis for the ALJ to discredit Dr. Doust's opinions pursuant to the supportability factor. *See, e.g., Martinez v. Comm'r of SSA*, 2023 WL 6211407, *5 (D. Ariz. 2023). On the other hand, and as Plaintiff correctly notes in her reply brief, the Court cannot affirm on this basis because the ALJ did not identify this as a reason for discrediting Dr. Doust's opinions. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The ALJ's consistency analysis was flawed for the same reasons as the supportability analysis. Although the ALJ identified certain imaging records that did not show a high "degree of abnormality," the ALJ made no attempt to explain why such records were inconsistent with Dr. Doust's pain-related opinions. Additionally, and as Plaintiff

notes in her brief (Doc. 11 at 14), some of the imaging records not discussed by the ALJ depict various abnormalities. (*See, e.g.*, AR at 834 ["There is diffuse osteoporosis. There is idiopathic skeletal hyperostosis from T5 through T10. . . . There is Subcutaneous edema/infiltration posterior to the thoracic spine."].) Perhaps there is a good explanation for why such imaging records should still be viewed as inconsistent with Dr. Doust's opinions, but the ALJ did not offer such an explanation in the underlying decision (and the Commissioner does not even attempt to offer a *post hoc* explanation in the answering brief). The Court cannot affirm on this record.

### B. **Plaintiff's Symptom Testimony**

#### 1. Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

#### 2. The ALJ's Evaluation Of Plaintiff's Symptom Testimony

As noted, the ALJ concluded that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR at 26.) Altogether, the ALJ identified six reasons for this adverse credibility finding: (1) "[t]he claimant's allegations are not supported by physical examination"; (2) "[t]he claimant's allegations are not supported by radiographic and other objective evidence"; (3) "[t]he claimant's treatment for her physical conditions has been conservative and limited in nature"; (4) "the extent of the claimant's psychological allegations is not supported by

the findings on mental status examination"; (5) "[t]he claimant's mental health treatment has been conservative and limited since the amended alleged onset date"; and (6) "the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.* at 23-24, 26.)

### 3. The Parties' Arguments

Plaintiff argues that the ALJ provided insufficient reasons for discrediting her symptom testimony. (Doc. 11 at 16-22.) In general, Plaintiff argues that the ALJ's analysis was deficient because the ALJ simply "listed select medical records and imaging" without explaining why the cited materials were inconsistent with her testimony. (*Id.* at 18.) Plaintiff further argues that the ALJ's discussion of conservative treatment was "an insufficient reason to reject [her] symptom testimony" because "there is no evidence that any other courses of treatment were suggested for [her] impairments" and "no evidence that any other types of treatment would have changed the outcome of [her] chronic pain." (*Id.* at 18-19.) Plaintiff also contends that "other courts have doubted that prescriptions of strong narcotic medications, with potential serious side effects, and a course of epidural steroid injections, may properly be considered 'conservative care.'" (*Id.* at 20.) Finally, Plaintiff contends that "[t]he vocational expert's testimony, coupled with [her] credible symptom testimony, would require an ALJ to find [her] disabled." (*Id.* at 21.)

In response, the Commissioner contends that the ALJ's decision to discredit Plaintiff's symptom testimony was proper because (1) "Plaintiff's statements . . . were not consistent with the medical evidence"; (2) "Plaintiff's allegedly disabling impairments responded well to treatment"; and (3) "although Plaintiff alleged pain with activity, she was able to wash laundry, cleaned her room and the bathroom, went shopping, and performed her personal care independently during the relevant period" and "[d]espite Plaintiff's allegations that she had difficulty concentrating and required isolation, the ALJ noted that Plaintiff read, watched television, handled money, played computer and phone games daily, and got along with authority figures, friends, neighbors and family." (Doc. 13 at 4-6.)

In reply, Plaintiff argues that "the Commissioner fails to defend the ALJ's insufficient rationale, and simply lists known regulations, then repeats the ALJ's rationale and relied upon findings, without showing that the ALJ decision in fact complied with the *correct* standard for a claimant credibility evaluation or responding to [Plaintiff's] arguments regarding the same." (Doc. 16 at 6.) Next, Plaintiff repeats her earlier arguments regarding her course of treatment. (*Id.* at 6-7.) As for the Commissioner's arguments regarding her activities of daily living, Plaintiff responds that "a mere list of activities, without more, fails to show that a claimant's symptom testimony is invalid." (*Id.* at 7-8.)

### 4. Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

As noted, one of the ALJ's proffered reasons for the adverse credibility determination—which Plaintiff did not acknowledge in her opening brief—was that Plaintiff's description of her symptoms conflicted with Plaintiff's activities of daily living. (AR at 26.) Under Ninth Circuit law, this is a permissible basis for discounting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency was supported by substantial evidence. During the hearing, Plaintiff testified that her mental health and physical conditions cause her to experience various extreme limitations in her daily activities. For example, as for her mental health conditions, Plaintiff testified that her depression causes her to repeatedly "self-isolate where [she] just [doesn't] want to talk to anyone, deal with anyone," that each depressive episode "last[s] a couple of days at least," and that she experiences such depressive episodes "at least, maybe, once a week when it's that bad." (AR at 47-48.) Plaintiff also testified that she suffers from debilitating panic attacks "three to four times a month at least." (*Id.* at 49.) Separately, as for physical conditions, Plaintiff testified that she suffers from constant ("the pain is there all the time") back pain that's "like a stabbing pain at times, burning, . . . it's almost like someone's like hitting you in the back." (*Id.* at 50.) Plaintiff further testified that this pain causes her to lay down for a minimum of two hours during "a typical eight-hour schedule" and that she can only stand for 15 minutes before she needs to sit down, can only walk for 15-20 minutes, and can only lift "less than ten pounds" without causing significant pain. (*Id.* at 51-52.) Additionally, Plaintiff testified that she suffers from vision problems that "greatly" "affect[] [her] ability to do things like watch TV or use a computer or even use [her] phone." (*Id.* at 53.) However, in her function report, Plaintiff acknowledged that she does the laundry, cleans her house, goes shopping for an hour at a time, is able to pay her bills and handle her finances, and is able to "read[] and play[] games on the computer or phone" "daily very well." (*Id.* at 295-96.) It was rational for the ALJ to make a finding of inconsistency under these circumstances. In particular, it was rational for the ALJ to find an inconsistency between Plaintiff's description of her vision problems (*i.e.*, those problems "greatly affect" her ability to use her computer and phone) and Plaintiff's acknowledgement in her function report that she reads and plays games on her computer and phone "daily very well." And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

The Court also disagrees with Plaintiff's contention that her ability "to do sporadic activities at her own pace and with time for rest in between activities is not inconsistent with this record and with the ability to sustain full time work." (Doc. 16 at 7.) The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014). This makes sense—a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching daily activities would not, alone, compel a finding of non-disability. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . ."). *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

Because the ALJ identified a clear and convincing reason, supported by substantial evidence, for discrediting Plaintiff's testimony, any other shortcomings in the ALJ's analysis were harmless. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

C.     **Remedy**

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in the remand of her case for the limited purpose of calculating benefits. (Doc. 11 at 22.)

"The credit-as-true analysis has evolved in our circuit over time, thus providing a challenge for application by the district court." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). As the Ninth Circuit has clarified in recent opinions, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id. See also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) ("[O]ur jurisprudence . . . requires remand for further proceedings in all but the rarest cases.").

On the merits, "[t]he credit-as-true rule has three steps. First, we ask whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Second, we determine whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. And third, if no outstanding issues remain and further proceedings would not be useful, only then do we have discretion to find the relevant testimony credible as a matter of law. Even if all three steps are met, the decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (cleaned up). A district court properly exercises its discretion to remand for further proceedings where "there is serious doubt as to whether [the claimant] is disabled." *Leon*, 880 F.3d at 1048. *See also Brown-Hunter*, 806 F.3d at 495 ("[E]ven if all three requirements are met, we retain flexibility in determining the appropriate remedy. We may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.") (cleaned up).

The credit-as-true rule is inapplicable here. Although step one is satisfied in light of the ALJ's failure to provide legally sufficient reasons for discrediting the opinions of Dr. Doust, step two is not—further administrative proceedings would be useful to enable the ALJ to address the analytical deficiencies discussed above, including why the ALJ viewed the largely "normal" physical examination findings (both by Dr. Doust and by other

medical providers) as inconsistent with Dr. Doust's opinions and whether the unexplained, checkbox nature of Dr. Doust's opinion form detracted from the supportability of Dr. Doust's opinions. Alternatively, even if step two were satisfied, the Court would decline in its discretion to order a remand for benefits under step three because the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled. As discussed, the ALJ permissibly discredited Plaintiff's symptom testimony. *Cf. Leon*, 880 F.3d at 1048 ("[W]e remand on an open record because there is serious doubt as to whether Leon is in fact disabled, given that the district court upheld the ALJ's other findings."). Additionally, Dr. Doust's unexplained, checkbox opinions—which, as the Commissioner has pointed out, may be unpersuasive for additional reasons beyond those identified by the ALJ— conflict with the other medical opinions in the record. *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (rejecting the claimant's argument that "because the ALJ's reasons for discrediting her testimony and Dr. Riley's assessment are legally insufficient, we have no choice but to . . . remand for an award of benefits" and concluding that a remand for further proceedings was the appropriate remedy because, even though "Claimant may be disabled," "evidence in this record not discussed by the ALJ" cast serious doubt on the claim of disability).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed**. This matter is **remanded** for further proceedings. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 16th day of October, 2023.

---
Dominic W. Lanza
United States District Judge